UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-CR-20884-WILLIAMS

UNITED STATES OF AMERICA

v.

LESLIE ROBERTS,

      Defendant.
_____/

## FACTUAL PROFFER

Had this case proceeded to trial, the United States would have proved beyond a reasonable doubt that between approximately April 2010 and September 2012, Leslie ROBERTS (hereinafter "the defendant") was a Miami art dealer working primarily out of his Coconut Grove, Florida gallery, Max in the Grove. The name "Max in the Grove" was a reference to the artist P.M., who is a living artist engaged in the production of artworks from a studio located in New York, New York ("the New York studio"). Each P.M. work possessed both a title and a unique control or serial number assigned to it by the New York studio. While more than one work may have the same title (because it was of the same or substantially the same image), every work was assigned its own serial number, which appeared on the back of the canvass, along with a copyright mark. The New York studio maintained records of all images created and their unique serial numbers. Each P.M. work also possessed a certificate of authenticity, with a raised seal, provided by the New York studio that accompanied each painting upon its sale.

While he owned Max in the Grove, the defendant agreed with his son, Leslie Roberts III, and his daughter, Britney Roberts, to forge P.M. artworks in order to defraud Max in the Grove customers, who believed they were purchasing real P.M. works. In particular, the defendant,

1

Leslie Roberts III and Britney Roberts defrauded customers by either selling them forged P.M. paintings or, in the case of one consignment client, returning forged P.M. paintings and falsely claiming that the client's (real) painting failed to sell.

For example, In April 2010, E.S. arranged for the defendant to sell 17 P.M. paintings on consignment from Max in the Grove. E.S. had received the paintings through the New York studio. Prior to his delivery of the paintings to the defendant, E.S. had 14 of the 17 paintings professionally photographed, and E.S. photographed the remaining 3 paintings himself. Then, on April 26, 2010, E.S. traveled to Florida to deliver the 17 paintings to the defendant and later delivered to the defendant the certificates of authenticity that accompanied each painting. In approximately April of 2011, after repeatedly reporting that E.S.'s paintings had failed to sell, the defendant told E.S. that he had sold two paintings to an individual with the initials "P.T." In July of 2011, at E.S.'s request, the defendant agreed to send 13 of E.S.'s 17 paintings back to him, claiming that two had been sold to P.T. and that another two were to be sold to a New York attorney.

In mid to late July of 2011, the defendant shipped 14 of the P.M. paintings back to E.S. in Virginia via UPS, a private interstate commercial carrier; E.S. received the paintings on August 4, 2011. When E.S. opened the wooden crate, he suspected the first painting to be a forgery and contacted law enforcement. Upon further review by E.S., the FBI, and the New York studio, it was determined that one painting of the 14 was an original P.M. and that the remaining 13 paintings were forgeries. Two of the forgeries were of the same image but also contained the same serial number, which meant that both could not have been produced by the New York studio. Finally, one of the forgeries was the same image and serial number belonging to a painting the defendant had earlier claimed he had sold to P.T.

The losses to the victims defrauded by the defendant, Leslie Roberts, III and Britney Roberts, total between $400,000 and $1,000,000.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 2/5/2015     By: _____ for
AMANDA PERWIN
ASSISTANT UNITED STATES ATTORNEY

Date: 2-5-2015    By: _____
MICHAEL MIRER, ESQ.
ATTORNEY FOR DEFENDANT

Date: 2-5-2015    By: _____
LESLIE ROBERTS
DEFENDANT