IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

FILED by __PG__ D.C.

MAR 14 2016

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

UNITED STATES OF AMERICA

Plaintiff(s)

V.                                                                  Criminal Case No. 113C 1:14-20884-CR

LESLIE ROBERTS
BOP Inmate No. 19733-004

Defendant

---

## MOTION REQUESTING A JUDICIAL RECOMMENDATION CONCERNING LENGTH OF RRC/HALFWAY HOUSE PLACEMENT

---

COMES NOW, the Defendant, Leslie Roberts, pro se and unskilled in the field of law, and respectfully moves this Honorable Court to recommend that the Bureau of Prisons ("BOP") afford the Defendant the maximum Residential Re-entry Center ("RRC")/halfway house placement time of 7 months preceding the end of his sentence. In support thereof, Defendant states as follows:

1. On June 15, 2015 Defendant was sentenced by this Court to a term of twenty two (22) months imprisonment, followed by a term of three (3) years of supervised release.

2. Pursuant to the Second Chance Act of 2007 ("SCA") the BOP may place a defendant into RRC/halfway house up to twelve months prior to his/her release date if it is determined that his placement in a halfway house is of *"sufficient duration to provide the greatest likelihood of successful reintegration into the community."*

3. The criteria that the Bureau of Prisons is to consider in assessing an individual applicants' eligibility for up to twelve months of RRC/Halfway House includes any statement made

by the Court concerning the purposes that warranted a sentence to imprisonment and recommending the type of correctional facility that would be appropriate. 18 U.S.C. 3621(b)(4)(A), (B). (See **Exhibit 1, USDC, Western District of Kentucky, United States v. Casey Wallace, 5:13-cr-00027, Docket 46).** An RRC/halfway house is a correctional facility with superior transitional programs to help inmates rebuild their ties to the community.

4. Mr. Roberts is currently housed at the Miami Federal Correctional Institution Satellite Camp in Miami, Florida. His release date is April 17, 2017, and an RRC placement will not affect this.

5. According to Federal Bureau of Prisons' Memorandum for Chief Executive Officers, June 24, 2010, (see **Exhibit 2: Revised Guidance for Residential Reentry Center (RRC) Placements**) Extended Pre-Release RRC/Halfway House time decisions *"are to focus on RRC placement as a mechanism to reduce recidivism."* Mr. Roberts's substantial transitional obstacles and prior arrests attest to his need for such comprehensive institutional rehabilitation.

6. Mr. Roberts is 53 years old. He is young enough to be reformed and rejoin law-abiding society with all the help available from 7 months of placement at a federal halfway house.

7. Mr. Roberts's years of employment history are entwined in his instant offense as stated in his PSI. He is banned from his former occupation. Employment prospects are not promising without the retraining assistance at a federal RRC.

8. In addition, Mr. Roberts has participated in the following BOP programs in an attempt to prepare for his release and aid in his rehabilitation:

   a. Spanish 1;
   b. Pre-Release Program;
   g. Stress Management;
   h. AIDS Awareness.

9. A recommendation that Mr. Roberts be placed for 7 months at an RRC/Halfway House would be consistent with the reintegration principles of the Second Chance Act and would allow Mr. Roberts to better address the underlying impetus that led to commission of his past and instant offenses.

10. A recommendation that Mr. Roberts be afforded RRC/Halfway House placement time of 7 months would maintain the integrity of the disposition while still preserving the punitive aspect of his sentence and would allow Mr. Roberts the opportunity to address and correct his neglected medical condition, elevated risk of revocation by virtue of his limited job skills, employment history of fraud, imminent foreclosure, lack of savings or assets, back taxes, ruined business and personal reputations, and prior arrests. He will remain under the auspices of the BOP while in the supervised environment of the RRC.

11. Mr. Roberts expressed remorse and contrition regarding his commission of his offenses and he cooperated fully with the Prosecution.

12. Even though recommended by his sentencing judge, the Honorable Kathleen Williams, the Bureau of Prisons did not allow him to continue participation in the Pfizer treatment program for his extreme psoriasis, to much personal suffering.

13. The Attorney General of the United States and the Inspector General of the BOP have noted in reports and public statements that the BOP is under-utilizing various programs available, such as RRC/halfway house. It should also be noted that generous RRC/halfway house placement reduces the cost of traditional incarceration.

WHEREFORE NOW, above premises considered, the defendant respectfully requests that this Honorable Court GRANT [his] motion and all relief requested herein, issuing a judicial recommendation to the BOP that Defendant be granted reasonable placement time of 7months

of halfway house, reflecting the same and granting all other relief required by Law, Liberty, and Equity.

Done this 7th Day of March, 2016.

Respectfully Submitted,

x *[signature: Leslie Roberts]*

Leslie Roberts, Register # 19733-004
FCI Miami Satellite Camp
PO Box 779800
Miami, FL 33177

## **CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that I have served a copy of this pleading upon the Clerk of the Court, VIA US Mail, properly addressed, First-Class Postage prepaid. The accused further requests that a copy of this pleading be forwarded to all parties, VIA the CM/ECF System, as he is indigent, detained, and has no other means.

Done this 7th Day of March, 2016.

Respectfully Submitted,

X _Leslie Roberts_

Leslie Roberts, Register # 19733-004
FCI Miami Satellite Camp
PO Box 779800
Miami, FL 33177

EXHIBIT 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CRIMINAL ACTION NO. 5:13-CR-00027-TBR

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| V     ORDER | |
| CASEY WALLACE | DEFENDANT |

This matter comes before the Court on Defendant Casey Wallace's motion for a judicial recommendation concerning the length of halfway house placement. (Docket #44). The United States has responded. (Docket #45). For the following reasons, Wallace's motion (Docket #44) is GRANTED and the Court RECOMMENDS that the Bureau of Prisons place Wallace in an appropriate community correctional facility for the maximum time Wallace is eligible, not to exceed twelve months.

Wallace was charged in this case with possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § § 846 and 841(b)(1)(C). (Docket #1). Wallace entered a plea agreement pursuant to Rule 11(c)(1)(C). (Docket #21). This Court sentenced Wallace to a 60-month term of imprisonment to be followed by a 36-month term of supervised release. (Docket #32). The Court denied Wallace's motion for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(2). (Docket #42).

Wallace now request this Court recommend to the Bureau of Prisons that Wallace be placed in a halfway house for the maximum allowed time of twelve months. (Docket #44). The United States responds that the United States has no objection but that this Court is not required to make a recommendation and any recommendation would not be binding upon the Bureau of Prisons. (Docket #45).

1

EXHIBIT 1

"The Bureau of Prisons shall designate the place of the prisoner's imprisonment." 18 U.S.C. § 3621(b). The "Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c). "Such conditions may include a community correctional facility." *Id.* "Although [residential reentry center] placement is helpful for readjustment to society, a federal prisoner does not have a federal right to serve the final twelve months of his sentence in a RRC." *Bell v. Zych*, 2010 U.S. Dist. LEXIS 130193 *9 (E.D. Mich. 2010) (citation omitted).

A Court may make a recommendation as to the appropriate penal or correctional facility. 18 U.S.C. § 3621(b). However, "[a]ny order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person." 18 U.S.C. § 3621(b). A "district court's recommendation to the Bureau of Prisons is just that—a recommendation." *United States v. Ceballos*, 671 F.3d 852, 855-56 (9th Cir. 2011) (collecting cases).

Wallace states he is only 30 years old and has begun rehabilitating himself. This Court ordered Wallace be placed in a facility where he could participate in a Residential Drug Abuse Treatment Program (RDAP). (Docket #32). Wallace states he has graduated from this program. Wallace also states he has participated in the following BOP programs: anger management; stress management; job search techniques; job fair; resume workshop; and money management. (Docket #30). Wallace requests placement in a halfway house because his employment history has been "anemic, as he has been unemployed most of his adult life due to frequent

2

incarcerations and lack of job skills," and his "[e]mployment prospects are not promising without the retraining assistance at a federal RRC." (Docket #44).

The Court commends Wallace for the efforts he has taken so far. The Court hereby RECOMMENDS that the Bureau of Prisons place Wallace in an appropriate community correctional facility for the maximum time Wallace is eligible, not to exceed twelve months.

Thomas B. Russell, Senior Judge
United States District Court

December 15, 2015

cc: counsel of record;
Casey Wallace, *pro se* movant
FCI Forrest City Medium
PO Box 3000
Forrest City, AR 72336

U.S. Probation - Paducah

3



Federal Bureau of Prisons

EXHIBIT 2                                    6 pp

Washington, DC 20534

June 24, 2010

MEMORANDUM FOR CHIEF EXECUTIVE OFFICERS

FROM:       D. Scott Dodrill, Assistant Director
            Correctional Programs Division

SUBJECT:    Revised Guidance for Residential Reentry Center
            (RRC) Placements

This memorandum provides guidance to staff when making inmates' pre-release Residential Reentry Center (RRC) placement decisions. Assessment and decision-making practices are to focus on RRC placement as a mechanism to reduce recidivism. Recidivism reduction results in cost efficiencies, less victimization, and safer communities.

Our RRC resources are limited and must be focused on those inmates most likely to benefit from them in terms of anticipated recidivism reduction. In other words, our decisions are to be based on an assessment of the inmate's risk of recidivism and our expectation that RRC placement will reduce that risk. Our strategy is to focus on inmates who are at higher risk of recidivating and who have established a record of programming during incarceration, so that pre-release RRC placements will be as productive and successful as possible.

As Chief Executive Officers, you play a vital role in implementing the Bureau of Prisons' (Bureau) reentry strategy, including RRC utilization. This guidance will assist you in making RRC placement decisions.

**GENERAL CONCEPTS** - The following general concepts apply to all RRC placement assessments and decision-making:

**Eligibility vs. Appropriateness** - When making RRC placement determinations, it is critical that staff understand the difference between eligibility and appropriateness. All inmates are statutorily eligible for up to 12 months pre-release RRC

-1-

EXHIBIT 2

placement. Nevertheless, not all inmates are appropriate for RRC placement, and for those who are appropriate, the length of the RRC placement must be determined on an individual basis in accordance with this guidance.

**Individual Assessments Required** - Inmates must continue to be individually assessed for their appropriateness for and the length of pre-release RRC placements using the following five factors from 18 U.S.C. § 3621(b):
   (1) The resources of the facility contemplated;
   (2) The nature and circumstances of the offense;
   (3) The history and characteristics of the prisoner;
   (4) Any statement by the court that imposed the sentence:
      (a) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
      (b) recommending a type of penal or correctional facility as appropriate; and
   (5) Any pertinent policy statement issued by the U.S. Sentencing Commission.

These individual assessments occur as part of the inmate classification and program review process, with the unit manager holding decision-making responsibility at the unit level. Institution- or region-specific parameters for RRC placement decision-making are prohibited.

**RRC Placements of More Than Six Months** - Regional Director approval of RRC placements longer than six months is no longer required.

**Residential Drug Abuse Program Graduates** - Inmates who successfully complete the institution-based portion of the Residential Drug Abuse Program (RDAP) will continue to be assessed for pre-release RRC placements according to the guidance in the Psychology Treatment Programs policy.

**Coordination Between Institution Staff and Community Corrections Management Staff** - Community Corrections Management (CCM) staff must continue to review referral documents and other pertinent information for every RRC referral. If CCM staff question the appropriateness of the referral or the length of the requested placement, they must communicate these concerns to the referring institution. Differing recommendations will be resolved at the appropriate level within the regional management structure. Under no circumstances should CCM staff unilaterally deny RRC referrals or adjust placement dates, unless these determinations can be linked directly to a lack of RRC bedspace or fiscal resources.

-2-

**Medical and Mental Health Concerns** - When considering RRC placement for inmates with significant medical or mental health conditions, institution staff are strongly encouraged to coordinate release planning with CCM staff and Transitional Drug Abuse Treatment staff (for mental health concerns). If an inmate's condition precludes residential placement in an RRC, and if staff can make appropriate arrangements to secure the community-based medical and/or mental health services these inmates will need, direct placement on home detention should be considered.

**Inmates Who Decline RRC Placement** - If an institution recommends release through a community-based program and the inmate declines, institution staff should counsel the inmate as to the benefits of a structured reentry program. However, if the inmate continues to decline this opportunity, she/he may do so without being subject to disciplinary action.

**Inmates Who are Inappropriate for RRC Placement** - Inmates who, during incarceration, have refused programming or failed to engage in activities that prepare them for reentry may be inappropriate for RRC placement. Similarly, inmates with recent, serious, or chronic misconduct and those who have previously failed an RRC program may be inappropriate.

RRCs provide opportunities for inmates to acquire the support systems, e.g., residence, employment, follow-up treatment, they will need to live a crime-free life, but inmates must be ready to take advantage of these opportunities. If they have clearly demonstrated through their behavior that they are not ready, RRC programming is unlikely to result in behavioral change and would be a waste of the Bureau's resources, as well as place the public at undue risk.

Professional judgment must be exercised, insofar as inmates with some misconduct, or some refusal to participate in programming, may still be appropriate for RRC placement. Staff must exercise their discretion in determining whether an inmate is ready to take advantage of the opportunities and expanded liberty that RRCs offer.

If staff decide not to refer an inmate for RRC placement, the inmate's release should be carefully coordinated with U.S. Probation or Court Services and Offender Supervision Agency (DC Code inmates).

**Professional Judgment** - RRC placement, in and of itself, is not a reward for good institutional behavior, nor is it an early release program or a substitute for the furlough program. RRC placement and length of placement decisions cannot be reduced solely to a classification score or any other type of arbitrary categorization. While staff assessment and analysis of tools such as the Custody Classification Form (BP-338) and the Inmate Skills Development (ISD) Plan are helpful in establishing broad-based groupings, staff must continue to exercise their professional judgment when making individual inmate RRC placement decisions and be prepared to justify those decisions.

## LENGTH OF RRC PLACEMENT

### General Guidelines

- **Prospective Application** - Inmates with previously established RRC transfer dates will not be reconsidered under this guidance.

- **90 Days Minimum Placement** - With the exception noted below under the heading of Lower-Risk Inmates, inmates should be considered for at least 90 days pre-release RRC placement whenever possible.

- **High-Risk Versus Low-Risk Inmates** - RRCs are most effective, in terms of recidivism reduction, for inmates at higher risk for recidivism. Consequently, appropriate higher-risk inmates should be considered for longer RRC placements than lower-risk inmates. The BP-338 measures some of the factors that predict risk. Ordinarily, the lower the BP-338 score, the lower the risk; conversely, the higher the score, the higher the risk. Therefore, low-, medium-, and high-security inmates tend to be higher risk than minimum-security inmates.

  Similarly, the ISD tool identifies deficits that may contribute to recidivism. Inmates with a significant number of deficits may be at higher risk for recidivism than those with few or no deficits. When making RRC placement decisions, staff should ensure that the BP-338 and ISD Assessment have been accurately completed. While neither tool can be relied upon solely, they are helpful tools in assessing an inmate's risk level.

-4-

**Lower-Risk Inmates**
- **Consider Home Detention Option** - With the exception of RDAP graduates, institution staff will evaluate minimum-security inmates who have an approved release residence to determine if direct transfer from an institution to home detention is appropriate. If so, this determination will be noted in item 11 of the Institutional Referral for RRC Placement form, and the requested placement date (item 3.b.) will be the inmate's home detention eligibility date. These procedures are to be followed even if this results in a community-based placement of fewer than 90 days.

- If a minimum-security inmate is not appropriate for direct placement on home detention, staff will request an RRC placement of sufficient length to address the inmate's reentry needs.

- CCM staff are to ensure that procedures are in place for the direct placement of inmates on home detention, or after only a brief stay (14 days or less) in an RRC. At a minimum, CCM staff must monitor their minimum-security population weekly and follow up with RRC contractors to ascertain why eligible minimum-security inmates have not been referred for placement on home detention.

**Higher-Risk Inmates** - As previously stated, in terms of recidivism reduction, inmates at higher risk for recidivism stand to benefit most from RRC services. When considering the length of the RRC placement for higher-risk inmates, staff should consider the following:

- **History of Individual Change** - Assess whether the inmate's history of individual positive change during incarceration indicates an ability and willingness to take advantage of opportunities for positive reintegration to the community. Based on that history, staff must predict whether the inmate is likely to respond positively to the highly structured regimen of an RRC, and whether the inmate will avail her/himself of the available RRC opportunities.

- **History of Program Participation** - Assess the inmate's history of successful completion of, or participation in, available programming opportunities during incarceration, including programming which addresses the deficits identified through the ISD System. In particular, determine whether the inmate completed or made satisfactory progress toward completing a program shown to reduce recidivism, such

-5-

as any of the cognitive/behavioral treatment programs described in the <u>Psychology Treatment Programs</u> Program Statement, as well as academic and vocational training programs.

- **Inmate's Community Support Systems** – Assess the inmate's available community support systems, e.g., housing, employment, etc.

- **Length of RRC Placement** - Longer RRC placements should be considered for inmates whose following factors are high:

    - Risk for recidivism;
    - Demonstrated successful participation in or completion of programming opportunities; and
    - Need to establish community support systems.

Your assistance in implementing these procedures is appreciated. I look forward to working with you as we seek to effectively utilize the Bureau's limited RRC resources.

—6—

Leslie Roberts 19733-004
Federal Prison Camp
P O Box 779800
Miami, FL 33177

Clerk of Court
Wilkie D. Ferguson Jr.
US Courthouse
400 North Miami Avenue
Miami, FL 33128

CERTIFIED MAIL
7009 2820 0001 7394 6969

USMS INSPECTED